**REMOVAL OF SIDE-TRACKS FROM LEASED LAND.**

[Circuit Court of Columbiana County.]

BYRON S. AMBLER V. ERIE RAILROAD COMPANY.

Decided, October Term, 1906.

*Trade Fixtures—Removal of—Where the Fixture is a Railway Side-Track on Leased Land—Reservations in Lease—Abandonment of Premises.*

Where a railroad company puts down side-tracks, at the request of a coal company upon its leasehold estate, for the purpose of removing the coal, the lease providing that, upon an abandonment of the premises upon the part of such coal company, it shall have the right to remove the mining appliances, such railroad company has a right to remove such side-tracks, upon the abandonment of the premises by the coal company, over the objection of the lessor, provided it does so without doing substantial injury to the freehold, and before such abandonment takes place.

COOK, J.; BURROWS, J., and LAUBIE, J., concur.

John McClymonds was the owner of a farm in this county. Many years ago the predecessors of the Erie Railroad Company, to whose rights the Erie Railroad Company succeeds, secured a right of way for railroad purposes for a double track railroad sixty feet wide. If there was any deficiency in the railroad company's rights in its incipiency, it has been cured by occupation under the statute of limitations and such right had been conclusively settled.

McClymonds' heirs made a lease to Byron S. Ambler and William Dunn for the coal underlying the farm. This lease was duly assigned and transferred by Byron S. Ambler and William Dunn to Frank M. Osborne, who now holds the same in his own right for the Lisbon Coal Company.

Afterwards Byron S. Ambler purchased this farm from the McClymonds heirs, subject to the rights of the Erie Railroad Company, and also subject to the rights of Frank M. Osborne and his assignees under his lease.

The lease provided that the lessees should have the right to use so much of the surface as was necessary for buildings, tram-

ways, tipples, tracks, and other appliances necessary to mine and market the coal. The lease further provided that whenever the lessees or their assigns should find it unprofitable to mine for coal on the premises, they might abandon the same, by giving thirty days' notice to the lessor or their assigns, and after such abandonment, they might remove all appliances put there for mining and removing the coal from premises, if done within ninety days from the date of abandonment. Afterwards, by an agreement in setttlement of a law suit between the plaintiff and the Lisbon Coal Company, the lessees through Osborne, this time was extended, and notice. given to the railroad company by the Lisbon Coal Company of such extension.

The railroad company had, at the request of the Lisbon Coal Company, put down four side-tracks to be used in the transportation of the coal of the coal company by the Erie Railroad Company. One of the tracks was upon the right of way of the railroad company which was the one nearest the main track, and the other three were upon the surface of the lands of the lessors.

Previous to the expiration of the time for removing the appliances by the agreement of the Lisbon Coal Company and plaintiff in the settlement of the law suit, the railroad company had removed the three side-tracks, situated upon the land then owned by plaintiff, as grantee of the McClymonds heirs, and after the expiration of such time was proceeding to remove the side-track from its right of way, when this action was instituted by the plaintiff to enjoin the railroad company from removing the last track, and also from carrying away the rails taken up from the other three tracks which were still upon his premises.

Two reasons are assigned by plaintiff why the railroad company has no right to take the last track up and remove the rails taken up from the other three tracks.

First, that under the lease the lessor's right to take them up was within thirty days from the abandonment of the premises, and that the extension granted by the plaintiff under the settlement of the litigation between him and the Lisbon Coal Company did not enure to the benefit of the railroad company;

and, second, that their tracks were such a permanent attachment to the surface that, upon the abandonment, they became absolutely the property of plaintiff.

As to the first question: These tracks were put down by the railroad company at the special request of the coal company. Three of them were upon the lands of the McClymonds heirs, but they were placed there under the provisions of the lease to the plaintiff as he well knew, he being the original lessee.

We see no reason why these side-tracks should not be governed by the same principles as the tipples, tracks and other appliances used by the coal company and placed there by it directly, and that when the plaintiff extended the time of removal, such extension extended to the tracks of the railroad company, as well to the appliances constructed directly by the coal company.

As to the second question, it is contended that in the reservation in the lease it was never intended that it should apply to such a permanent construction as the railroad tracks placed there for the purpose of transporting the coal. As to this question we are of the opinion that if there had been no provision in the lease that tracks could be removed, yet, there being a provision that the premises might be abandoned, that the railroad company would have the right to remove its tracks when the abandonment took place.

The abandonment was a termination of the lease, and would give to the lessee and those claiming under him the right to remove any appliance used as a trade fixture.

What is a trade fixture depends very much upon the intention of the parties. *Teaff* v. *Hewitt,* 1 O. S., 511.

An entirely different rule applies as to tenants, and persons having a permanent interest in the premises. The tenant owns the property but for a limited time; his tenure usually is short; hence the law is very lenient to him and usually permits him to remove any improvement except those the removal of which would be attended by a substantial injury to the freehold estate.

In this case it was anticipated, as shown by the lease, that the lessee might abandon the premises and thereby terminate the lease.

The case of *Wiggins Ferry Co.* v. *O. & M. Railway*, 142 U. S., 396, is directly in point, indeed stronger than the case at bar, as it was an action at law for compensation. The railroad company laid its tracks upon the premises of the ferry company with the ferry company's consent and afterwards abandoned the same. In that case it was said:

"We agree with the court below that the petitioner is not entitled to recover the value of the rails removed by the receiver from the premises upon Bloody Island. They were laid there under a 'mere easement granted by the petitioner, and obviously with no intention that they should become part of the realty. As between landlord and tenant, or one in temporary possession of lands upon any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for a purpose connected with such temporary possession. It is incredible that it could have been the intention of the parties that the rails and switches laid upon this ground by the railroad company should become the property of the landlord, when, by the terms of the contract, the ferry company had the right to put an end to it at any time upon six months' notice. In *Van Ness* v. *Pacard*, 2 Pet., 137, it was held that a house built by a tenant upon land, primarily for the purpose of a dairy, and incidentally for a dwelling-house for the family, did not pass with the land. The earlier authorities are reviewed in that case by Mr. Justice Story, and the conclusion reached, that whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term. In the case of *Wagner* v. *Cleveland & Toledo Railroad*, 22 O. S., 563, it was held that stone piers built by a railroad company as part of its road on lands over which it had acquired the right of way, did not, though firmly imbedded in the earth, become the property of the owner of the land, as part of the realty; and that, upon the abandonment of the road, the company might remove such structures as personal property. So in *Northern Central Railroad* v. *Canton Co.*, 30 Maryland, 347, it was held that the rails fastened to the roadbed of a railroad, as well as the depots and other buildings, might, under certain circumstances, be treated as trade fixtures, and removable by the company, if the surrounding circumstances showed that at the time rails were laid upon the land it was not intended

that they should be merged in the freehold. In that case the road was built upon land under a license and permission of the owner. It is entirely clear that the rails in the case under consideration did not become part of the realty, and that the receiver was not guilty of waste in removing them from the land.''

The petition of plaintiff will be dismissed at his costs.

*Carey & Mullins,* for plaintiff.

*Billingsley, Clark & DeFord,* for defendant.