152 So. 257

## STATE SAVINGS & LOAN CO. v. STATE MORTGAGE CO.

### 6 Div. 393.

Court of Appeals of Alabama.
Oct. 3, 1933.

Rehearing Denied Nov. 7, 1933.

Basil A. Wood, of Birmingham, for appellant.

Wilkinson, Burton & Wilkinson, of Birmingham, for appellee.

SAMFORD, Judge.

The plaintiff and defendant are separate corporations, each doing business in this state. The plaintiff was the owner of a number of shares of the capital stock of the defendant corporation, and as such became entitled to certain dividends duly declared by the defendant corporation. Upon the refusal of the defendant to pay such dividends plaintiff brought this suit.

The defendant answers, admitting the declaration of the dividends, but claiming by way of set-off amounts due by plaintiff to defendant, by way of rents and other items of expense paid by defendant for and on account of plaintiff, which it was due to pay.

The amount of the dividends was admitted, and certain expenses paid by defendant for plaintiff were admitted by way of set-off, leaving in controversy one-half of the expenses of a joint office, which defendant claims is due it and which claim is denied by plaintiff. On the trial the rulings of the court were in favor of plaintiff, resulting in an instructed verdict for plaintiff for the amount of the dividends, less the admitted items of set-off.

The evidence as set out in the bill of exceptions is not entirely clear as to the exact status existing between the two corporations, but enough appears from which we draw the conclusions which are to follow.

Prior to June, 1929, both corporations had occupied the same office space in the American Trust building. On that date they both moved to 2015 First Avenue North, and continued jointly to occupy that office, under an agreement by which State Savings & Loan Company signed the lease for the office and the expenses of the office were to be paid one-half by the State Savings & Loan Company and one-half by H. A. Longshore, who was under contract with the State Mortgage Company as its fiscal agent. This arrangement continued until October 19, 1929, when the contract of Longshore, as fiscal agent, with the State Mortgage Company, was canceled by Wm. C. Oates, examiner for the securities commission of the state of Alabama. What right or power the securities commission had to cancel this contract is not shown, but the cancellation seems to have been accepted and acquiesced in by all of the parties, and Longshore notified the officers of the mortgage company that he was out, and that the expenses would have to be paid by the mortgage company, and Leary, the president of the mortgage company, said: "That is all right," coupling this statement with the promise to get the Longshore contract reinstated, which was never done.

The mortgage company continued, after the above conversation, to occupy jointly with defendant the premises and to transact the business of the corporation through its agents at that place until April 10, 1930.

J. H. Craig was the secretary and treasurer of both corporations and kept the books and accounts of each and as the secretary and treasurer of the State Savings & Loan Company presented to Leary, the president of the mortgage company, the items of expense to be paid by the mortgage company. Leary said: "Let it alone until we get the contract settled." The contract of Longshore was never reinstated, and the mortgage company continued to occupy the premises and to receive the benefits thereof, but did not pay its half of the expense. There was a recognition of an obligation to pay rent by the board of directors of the mortgage company adopted January 14, 1930, the amount being fixed at $136.25 per month, but the payment of this amount was never made.

The relations of the two companies were shown to be very intimate and its dealings with each other very informal.

On the trial the defendant offered in evidence a number of expense bills paid by it in connection with the occupancy of the office, the claim being made that plaintiff was liable for one-half these amounts. These bills and receipts, on motion of plaintiff, were excluded, and at the request of plaintiff the jury was instructed to return a verdict for plaintiff, which was done.

[ ] Contracts of the nature here considered are of two kinds, expressed and implied. If the contract was expressed, that is, agreed to as to its terms and conditions, then plaintiff would be bound to pay defendant according to its terms. There was evidence tending to prove that Leary, acting as president of his corporation, agreed to carry on with defendant in the occupation of the office, continuing on the same terms as had been theretofore the arrangement as to admission of expense when Longshore was plaintiff's fiscal agent, and when he, as such fiscal agent, had borne the plaintiff's one-half of the expense. If, when Longshore's contract was canceled by the securities commission and Longshore notified the parties that he was out, plaintiff, through its officers, agreed to pay the expense theretofore assumed and paid by Longshore, and with this understanding plaintiff continued to occupy and enjoy the premises, then it would be bound, and the bills and receipts showing the amount would be admissible in evidence. If, on the other hand, there was no express agreement to pay, but with a full knowledge of all the facts, including the terms under which plaintiff was occupying the office, and that the contract of Longshore had been canceled and with this knowledge the plaintiff continued to occupy the premises, there would be an implied obligation to pay its fair share of the expense in maintaining the office. The plaintiff could not continue to occupy the office quarters jointly with defendant, knowing that Longshore's obligation was at an end, without assuming and becoming liable for its fair share of the expense. Harris v. Geneva Mill Company, 209 Ala. 538, 96 So. 622; Chapman v. St. Stephens Protestant Episcopal Church, Inc. (Fla.) 136 So. 238–242; Navco Hardwood 'Company v. Bass, 214 Ala. 553, 108 So. 452.

[ ] Even if plaintiff was not originally bound under the original contract to pay one-half of the expenses, and that obligation rested solely on Longshore as a part of the consideration of Longshore's contract with defendant, if defendant, with a knowledge of all the facts (which is not here disputed), either expressly or impliedly agreed to continue to occupy the premises upon the same

terms as were contained in the Longshore contract, it will not in this action be permitted to repudiate it. Wiggins Ferry Co. v. Ohio, etc., R. Co., 142 U. S. 396, 12 S. Ct. 188, 35 L. Ed. 1055.

The rulings of the lower court were not in accord with the foregoing opinion, and for the error apparent the judgment is reversed, and the cause is remanded.

Reversed and remanded.