## H. HERFURTH, JR., INC., v. UNITED STATES.

### No. 3881.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1935.

Edmund D. Campbell, of Washington, D. C. (Hugh H. Obear, of Washington, D. C., Gardner L. Boothe, of Alexandria, Va., and Douglas, Obear, Morgan & Campbell, of Washington, D. C., on the brief), for appellant.

H. H. Holt, Jr., Asst. U. S. Atty., of Norfolk, Va. (George C. Sweeney, Asst. Atty. Gen., Sterling Hutcheson, U. S. Atty., of Norfolk, Va., and Wm. S. Ward, Attorney, Department of Justice, of Washington, D. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This suit was brought by H. Herfurth, Jr., Inc., a Virginia corporation, against the United States under the Tucker Act, 28 USCA § 41 (20), to recover the sum of $6,250 for damages for alleged breach of a contract between the plaintiff and the United States. Upon the conclusion of the evidence, the District Court granted a motion of the United States for a directed verdict, and from the judgment based thereon, this appeal was taken.

On November 20, 1930, the corporation undertook to demolish the Center Market Building in Washington, D. C., belonging to the United States, under a contract which provided that the contractor should receive as compensation a certain sum of money, and, with certain reservations, all the materials in the building belonging to the United States. A recreation center was located on the second floor of the building at the time the contract was made. It contained twenty-five bowling alleys which had been firmly affixed to the floor. When the alleys were installed, numerous holes were cut in the original flooring, and the space between the flooring and the ceiling of the rooms beneath was packed with sawdust to deaden the noise. It was found, when the alleys were removed, that the flooring could not be used as such on account of the holes cut to admit the sawdust, and on account of the holes left when the bolts, screws, and nails used in affixing the alleys were removed.

The government paid the contractor the sum of money agreed upon for the removal of the building; but the contractor did not receive the bowling alleys themselves, which had an estimated value of $6,250. These were removed by one Harry I. Carroll, a former tenant, with the consent and approval of the Assistant Secretary of the Treasury, who represented the United States in the transaction. The contractor seeks in this action to hold the United States responsible for its failure to get this valuable material. The district judge held that the bowling alleys were trade fixtures, installed by a former tenant, and as such were not the property of the United States, and that the United States had

not broken its contract with the plaintiff, and that the plaintiff was not entitled to recover anything.

The bowling alleys were installed in the building in September, 1924, by a partnership consisting of Carrie Carroll, Sarah Ornstein, and Edward A. Cafritz, trading as the Colosseum Health Center. Subsequently on June 28, 1930, the United States leased a portion of the second floor, containing the bowling alleys, for a term of six months to Harry I. Carroll for the purpose of conducting a bowling alley business. The record does not show that there was any connection between this tenant and the firm which installed the alleys in 1924. The contractor knew that Carroll was a tenant in possession of the second floor, when the contract was made, and permitted him to remain temporarily in possession during the demolition, for the rental of $700 per month; but the contractor did not know that Carroll claimed the bowling alleys as his property. On the contrary, the value of the bowling alleys, as salvage, was taken into consideration by the contractor in entering into the contract to raze the building.

When the contractor learned that the tenant claimed the bowling alleys and intended to remove them, it requested the Treasury Department to notify the tenant that he had no right to the fixtures; but the Assistant Secretary of the Treasury replied that the alleys belonged to the tenant, and that the Department was without authority to prevent their removal, and that any action on the part of the contractor to prevent the removal must be taken at its own risk.

Notwithstanding the damaged condition in which the building was left by the removal of the bowling alleys, the contention that they were trade fixtures, installed by a tenant and removable by him at or before the conclusion of his lease, is not without support under the evidence in the case. In Hanrahan v. O'Reilly, 102 Mass. 201, the tenant's right to remove bowling alleys as trade fixtures before the end of his term was upheld against a grantee of the landlord. See, also, Van Ness v. Pacard, 2 Pet. 137, 7 L. Ed. 374; Wiggins Ferry Co. v. Ohio & M. Railway Co., 142 U. S. 396, 12 S. Ct. 188, 35 L. Ed. 1055; In re Montello Brick Works (D. C.) 163 F. 624; In re Lexington Motors Co. (C.

C. A.) 294 F. 233; Bee Bldg. Co. v. Daniel (C. C. A.) 57 F.(2d) 59. This rule seems to have been in the minds of the parties to the lease from the United States to Harry I. Carroll covering the last six months of 1930, for there was stricken from the printed form of lease used a provision that all fixtures and improvements, whether made at the expense of the lessee or not, should become the property of the United States and should not be removed by the lessee.

██ Nevertheless, we shall assume for the purposes of this decision that the alleys were not the property of the tenant Carroll, and that he had no lawful right to remove them; for the evidence fails to show that he had any title thereto. They were installed in 1924, under a lease held by a partnership of which he was not a member, and there is nothing whatever in the record to prove that he acquired any right, title, or interest from the earlier tenants. So far as we know, those tenants made no claim to the alleys as trade fixtures when they left the premises upon the expiration of their lease, and made no conveyances of any sort to Carroll. In this view of the situation, Carroll had no more right to remove the alleys than an outsider who had never had any legal interest in the premises. It is true that when the controversy arose, the Secretary of the Treasury expressed the opinion that the bowling alleys were Carroll's property, but the factual basis for this position is not disclosed, and obviously we may not accept it as decisive of the controversy.

██ We are of the opinion, however, that the judgment of the District Court should be affirmed. The United States did not break its agreement with the contractor, and whatever wrong the contractor suffered, assuming that the alleys were unlawfully removed by Carroll, was perpetrated by him and not by the federal government. The contractor contends that the government by affirmative action prevented it from receiving the property, but we think that this view cannot be sustained. It is true that the Treasury official in charge for the United States declined to notify Carroll that the alleys belonged to the contractor, and that he should not remove them, and, on the contrary, warned the contractor that it was without authority to prevent

the removal by Carroll; but after all, this expression of opinion, doubtless given in perfect good faith, did not amount to a breach of contract. The specifications of the contract made no express reference to the bowling alleys, but provided broadly that all materials removed, with certain reservations, should become the property of the contractor; and the government did nothing to deprive the contractor of the enjoyment of this right. Possession of the structure was given to the contractor on January 1, 1931, while the alleys were still in place. The contractor itself extended Carroll's tenancy, and finally stood by and permitted him to remove the fixtures in dispute. The situation was in its hands, and although it expressed its dissatisfaction, it did nothing to prevent the removal of the property by Carroll or to test the validity of his claim. Its right of action, if any existed, was not against the United States for breach of contract, but against Carroll for the unlawful conversion of the property.

Affirmed.