**Fritz B. WAGOR, John L. Avant et al., as Trustees of Dade County Construction Industry Advancement Fund, Appellants,**

v.

**CAL KOVENS CONSTRUCTION CORPORATION, Appellee.**

**No. 23875.**

United States Court of Appeals
Fifth Circuit.

July 17, 1967.

Rehearing Denied Oct. 11, 1967.

Dan P. S. Paul, John K. Aurell, Parker D. Thomson, Miami, Fla., for appellants.

Robert C. Ward, Miami, Fla., for appellee.

Before GEWIN and AINSWORTH, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

Appealing from a summary judgment entered in favor of appellee, Cal Kovens Construction Corporation (Kovens), appellants, as Trustees of the Dade County Construction Industry Advancement Fund (Trustees), are here contending that the lower court erred in disregarding settled principles both of the common law of contracts and of the emerging national labor law.

There is no genuine issue as to any material fact. On July 1, 1963, a collective bargaining agreement was entered into between the Carpenters' District Council of Miami, Florida and Vicinity (Carpenters' Union) and South Florida Chapter, The Associated General Contractors of America, Inc. and Home Builders Association of South Florida (Associations). It established working conditions, wages and fringe benefits for union carpenters employed in Dade County.

With respect to benefits, especially noteworthy are provisions of the agreement requiring the employer to pay to the Dade County Construction Employees Health and Welfare Trust Fund (Health and Welfare Fund) ten cents for each hour worked by his employees and to the Dade County Construction Industry Advancement Fund (Industry Fund) two and one-half cents (increased to five cents after July 1, 1964) for each hour worked. The Health and Welfare Fund is jointly administered by trustees separately appointed by the Carpenters' Union and the Associations and provides health and welfare benefits to employees. The Industry Fund provides funds for specified purposes to advance the construction industry and is administered by the Trustees who are appointed exclusively by the Associations. The Carpenters' Union has no participation in or control over the Industry Fund and has no voice in determining how the funds therein are to be expended.

The Trustees lean heavily upon the provisions of paragraph 2, article VIII of the agreement which read as follows:

"The parties hereby agree that the terms and conditions set forth in this Agreement shall be the same with any Employer irrespective of their membership or nonmembership in said Associations; and no more favorable terms or conditions will be given to any Employer during the term of this Agreement."

Kovens has never been a member of either Association; it has never designated either as its bargaining representative. It did not participate in the negotiation of nor did it sign such agreement. On the contrary, it elected to negotiate with the Union on its own. The resulting contract, though apparently never reduced to writing and formally executed, enabled it to employ union carpenters and required it to pay and provide identical wages and fringe benefits. It was not thereby required to make contributions to the Industry Fund.

Invoking the common law principles of ratification by acceptance and estoppel, appellants insist that appellee should be held to have adopted the contract negotiated by the Associations and to have breached its obligation to contribute to the Industry Fund. This contention will not withstand analysis. At no time did it deliberately enter into relations with the Carpenters' Union which were only consistent with the adoption of such contract. Cf. Wiggins Ferry Co. v. Ohio & M. Railway, 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055 (1892). On the contrary, its separate agreement with the Union, while providing for payments into the Health and Welfare Fund, omitted any reference to contributions to the Industry Fund. Neither the Union nor its members have any interest in such fund, and appellants are not seeking to vindicate the rights of either. Moreover, inconsistent with the theory of adoption is the mute fact that it has never contributed to such fund. Thus, on its facts, this case is clearly distinguishable from William Dunbar & Co. v. Painters and Glazers District Council, 129 F.Supp. 417 (D.D.C.1955), on which appellants misplace their chief reliance.

Adverting to the duty of the lower court to fashion the substantive law of this case from the policy of our national labor laws, as taught by Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1959) and its progeny, appellants complain that its decision herein undermines the industrial stability achieved through employer associations. They contend that there is a federal labor policy favoring multi-employer associations as collective bargaining units and that uniform conditions of employment are essential to their continued existence. Thus, their argument runs, they must be clothed with quasi-legislative authority to impose their collective bargaining agreements upon nonconsenting employers within the industry.

While there is nothing in the national labor laws reflecting adversely upon the existence of such units, National

Labor Relations Board v. Truck Drivers Local Union, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957), there is nothing which has been called to our attention, or which we have found, which prefers them to a nonmember employer choosing to go it alone in negotiating with a labor union. Indeed, the signposts point in the opposite direction. For example, in Terminal R. R. Assn. of St. Louis v. Broth. of R. R. Trainmen, 318 U.S. 1, 7, 63 S.Ct. 420, 423, 87 L.Ed. 571 (1943), it was observed:

> "The Railway Labor Act, like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions. * * * The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions."

Again, in National Labor Relations Board v. American Nat. Ins. Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952), the Supreme Court made it clear that section 8(a) of the Labor Management Relations Act (29 U.S.C.A. § 158(d)) does not permit either the government or a union to impose unilaterally on an employer certain terms and conditions of employment. It follows, a fortiori, that it does not suffer the unilateral imposition of contractual obligations by an association of employers upon a nonmember, competing employer.

■ Any federal policy favoring the multi-employer bargaining unit over the individual employer electing to act alone or promoting uniform terms and conditions of employment for an entire industry must await its promulgation by the Congress. It cannot and must not be postulated by this court.

■ Insisting that payments made by Kovens into the Health and Welfare Fund under its informal agreement with the Carpenters' Union were in patent violation of 29 U.S.C.A. § 186, appellants urge us to absolve it of criminality by holding that in law, if not in fact, it became a party to the written agreement negotiated by the Associations with such Union. The mere statement of this contention points up its lack of merit; it deserves no fuller discussion.

■ Finally, relying upon the above-quoted provisions of article VIII of their agreement with the Carpenters' Union, appellants argue that failure to require Kovens to contribute to the Industry Fund as a condition of its employment of union labor resulted in giving to it "more favorable terms or conditions" and constituted a clear breach of such agreement. But assuming, without deciding, that this is so, it does not follow that a breach of its contract by the Union may be transmuted into a contractual obligation which appellee expressly declined to assume.

The judgment of the district court was right. It is

Affirmed.

### ON PETITION FOR REHEARING

Before GEWIN and AINSWORTH, Circuit Judges, and LYNNE, District Judge.

### PER CURIAM:

In the preparation of its opinion the court gave careful consideration to the principles articulated in Lewis v. Seanor Coal Co., 382 F.2d 437, (3d Cir. 1967) and Moglia v. Geoghegan, 267 F.Supp. 641 (D.C.N.Y.1967). The petition for rehearing is denied.