**LOCAL UNION NO. 529, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Plaintiff,**

v.

**BRACY DEVELOPMENT CO., Inc., and Matark, Inc., Defendants.**

**No. ED 70-C-27.**

United States District Court,
W. D. Arkansas,
El Dorado Division.

Jan. 22, 1971.

James Youngdahl, Youngdahl, Sizemore, Brewer Forster & Uhlig, Little Rock, Ark., for plaintiff.

James G. Moore, Smith, Williams, Friday & Bowen, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

The plaintiff brings this action against the defendants for breach of a labor-management contract pursuant to Section 301 of the National Labor Relations Act, as amended, 29 U.S.C.A. § 185 et seq.

The plaintiff, Local Carpenters Union No. 529 of the United Brotherhood of Carpenters and Joiners, AFL–CIO, operates with a membership jurisdiction and offices in the Camden, Arkansas, area. The defendants, Bracy Development Co., Inc., and Matark, Inc., are commonly-owned, closely-held corporations with their principal offices in Little Rock, Arkansas, and are generally engaged in the construction of federally-financed, low rent, public housing projects.

The plaintiff contends that as a result of defendants' actions in the conduct of their business, the defendants adopted or ratified a statewide collective bargaining agreement which the Union had ne-

gotiated and executed with a multi-employer bargaining association, the Arkansas Chapter of the Associated General Contractors of America, Inc. The Union further contends that by virtue of the defendant, Bracy Development Co., Inc., using union carpenters from another carpenters' local union on another housing project in Clarksville, Arkansas, and by making payment of their hourly fringe benefits into the health and welfare insurance and apprenticeship training trust funds provided for in the master labor agreement of the Associated General Contractors' contract, together with other conduct of the company's officers and employees on this and the project in Camden, Arkansas, the defendants adopted or ratified and, therefore, became bound by the provisions of the Associated General Contractors' agreement. By this action of ratifying the contract, plaintiff maintains that the defendants became obligated to make trust fund contributions on the Camden job as well as all future jobs of this nature for both union and non-union carpenters where union carpenters were employed during the tenure of the Associated Contractors' three-year agreement. Specifically, the plaintiff maintains that Defendant Matark's failure to pay the hourly fringe benefits to the Trust Fund's Administrator on all hours of the union and non-union carpenters employed on the Camden, Arkansas, project was in violation of the Associated General Contractors' labor agreement's trust fund provisions as provided by Section 301(a) of the Act, 29 U.S.C.A. § 185(a). The plaintiff by this action seeks to recover for the Administrator of the Trust Fund a stipulated amount claimed to be owing as a result of the Camden project. Furthermore, the plaintiff seeks to have the defendants by order of the court to specifically perform, as one of their obligations under the agreement referred to herein, the payment of the hourly fringe benefits into the trust funds as specified in Sections 3–C and 3–D of the agreement on all future jobs until the agreement expires on June 30, 1971.

The defendants contend that they are not a party to the Associated General Contractors' statewide agreement with the Union. They maintain that they have never executed the agreement and that they were not and never have been members of the multi-employer bargaining association. The defendants further contend that the agreement sought to be enforced against them is oral and cannot be performed in one year rendering it unenforceable under Arkansas' Statute of Frauds. The defendants maintain that they have not by their conduct adopted or ratified the master labor agreement with the included trust fund provisions, and, therefore, payments into any such trust funds would be prohibited because there is no written agreement with the defendants defining the basis for the payments as required by Section 302(c) (5) (B) of the Act, 29 U.S.C.A. § 186(c) (5) (B).

It is undisputed that on the Camden project the defendant, Matark, paid the hourly fringe benefits to all employees in the form of extra wages to meet the requirements of federally-financed, low rent, public housing projects. By doing so, the defendants contend they neither breached any alleged agreements with the plaintiff nor violated any federal labor laws.

The case was tried to the Court November 3 and 4, 1970. The Court took it under submission for a decision following the receipt of briefs from the parties.

The primary questions presented for determination are twofold, as follows:

A. Whether or not the defendants were obligated as parties to the written contract and trust fund agreement negotiated and executed between the plaintiff, Local Union No. 529, and other local unions, and the multi-employer bargaining association, Arkansas Chapter of the Associated General Contractors of America, Inc., or

by their conduct the defendants became obligated to the provisions of these agreements through adoption or ratification thereof within the requirements of Sections 301 and 302 of the Act.

B. Whether or not the defendants, or either of them, breached the terms of the Associated General Contractors and Trust Fund Agreements on the Camden, Arkansas, project.

During the course of the trial there was introduced into evidence by stipulation of the parties a copy of the collective bargaining agreement executed on July 1, 1968, by the Arkansas Chapter of the Associated General Contractors of America, Inc., and eight carpenters' local unions in Arkansas, including Local 529. The agreement became effective on July 1, 1968, and provided for its expiration on June 30, 1971. Under the terms of the agreement, the contractors who were parties to the agreement recognized designated local carpenters' unions as the bargaining agents in their respective jurisdictional areas in Arkansas and these unions agreed to furnish the contractors the necessary number of qualified carpenters on request. Included in the agreement which, inter alia, established the wage scale of the union carpenters, were provisions in Sections 3–C and 3–D, respectively, that the contractors would pay fifteen cents ($.15) per hour per man into a health and welfare fund and two cents ($.02) per hour per man into an apprenticeship and training fund, payments commencing as soon as the trust fund agreements could be prepared. These provisions further stated that the unions agreed to furnish no men to any employer who failed or refused to pay these fringe benefits into the trust funds.

Following negotiation and execution of the agreement of the unions and the Associated General Contractors' attorney in behalf of the contractor members of the multi-employer bargaining association on July 1, 1968, the stipulated documentary evidence reflects that written trust fund agreements were subsequently prepared and executed by the unions and the employers' representative in conformity with the requirements of Section 302 of the Act. The trust fund agreements were to be administered by the Southwest Administrators, Inc., with offices in Shreveport, Louisiana, where the contributions to the funds were collected.

No evidence was received to refute the denials of the defendants that they never executed the contract in question nor were they members of the employer bargaining group. The Court concludes these facts to be undisputed.

Furthermore, much of the other evidence of the facts and circumstances surrounding the plaintiff's contacts and dealings with the defendants was undisputed. The dispute centers upon the legal obligations, if any, which evolve from the parties' relationships.

Sometime in November, 1969, Bracy Development Company, Inc., (hereinafter referred to as the "Bracy Company") began construction of a public low rent housing project in Clarksville, Arkansas. Local 1836, a carpenters' union, other than the plaintiff with territorial jurisdiction in that area, following negotiations and after mutual oral arrangement furnished the Bracy Company with some carpenters during construction of the project. There was no written agreement signed by Local 1836 and the Company. There was evidence that the Bracy Company did pay the hourly fringe benefits into the trust funds in the amounts specified in the Associated General Contractors' agreement. The plaintiff did not offer the business agent of this local union as a witness at the trial due to his illness. However, undisputed testimony of Bracy Company's representative in charge of the job indicated that the Clarksville local union's business agent never requested the company to sign the statewide Associated General Contractors' agreement nor even insisted its execution was necessary in order to be fur-

nished union carpenters on this particular job. While this business agent showed representatives of the Bracy Company the Associated General Contractors' contract on the Clarksville job, it was apparently for the purpose of ascertaining if the Associated General Contractors wage rates were comparable with the predetermined area rates Bracy's employees received as required by the Davis-Bacon Act for federal-aid construction work. It was agreed with Local 1836 that the hourly health and welfare and apprenticeship contributions would be paid to the Administrator of the trust funds for the union carpenters on the Clarksville job. Thereafter, Local 1836 furnished the Bracy Company with forms to report the names of the carpenters, their periodic payroll hours, and the amount of the submitted trust fund contributions. During the course of the Company's reporting on these forms, the Administrator changed the wording of the form without notice to the Company. The added clause read as follows:

> The undersigned Employer acknowledges that the contributions covered by this remittance report are made in conformity with written collective bargaining agreement currently in effect, between the employer and the Carpenters State Council of Arkansas, Local No. 1722, Local 2321, Local No. 884, Local No. 529, 1627 and Local No. 1836, and that the above report is a true and correct statement and remittance in accordance with the said agreement for all hours worked by employees covered thereby for the period stated. The Contractor's payment acknowledges an assent to this agreement.

▮ Mr. Frank Dean, who is both companys' Office Manager but not a corporate officer of either, testified that he signed some of the forms containing the above clause while others were submitted unsigned but without question by the Administrator.

Except for this evidence, there is no proof of any conduct or acts on the part of the Bracy Company on the Clarksville project to indicate its intention in the future to be bound by the Associated General Contractors agreement's trust fund provisions on other jobs when union carpenters are used. In fact, there were no negotiations on the Clarksville project between the plaintiff, Local 529, and the defendants with respect to the terms and conditions of any working arrangements on the subsequent Camden, Arkansas, job. The evidence does not disclose that when the Bracy Company made payments into the health and welfare and apprenticeship training trust funds in connection with the Clarksville project the plaintiff or its agent advised the defendants that it was contending or would contend that such payments were indicia of consent to the statewide labor agreement for the remainder of its duration. Accordingly, the Court finds that the reports were signed by one of the defendants merely as an acknowledgment that the information contained therein was accurate. Standing alone, such conduct by an office employee of a corporation without evidence of his having any capacity to bind the corporate defendants to long-term labor agreements will not supply the necessary elements of consent to produce a valid collective bargaining contract.

Under similar circumstances, it has been repeatedly held that, without more, an employer's temporarily making such payments in compliance with a union's instructions for obtaining employees did not obligate the employer to continue the payments to the trust fund rather than paying the hourly fringe benefits directly to the employees in the form of extra wages. Hann v. Ben Harlow d/b/a Acme Hardwood Floor Company, 271 F. Supp. 674 (D.C.Or.1967); Hann v. Adkins, 54 LC 11,722 (D.C.Or.1967); Hann v. Naylor, 51 LC 19,712 (D.C.Or. 1965).

However, the plaintiff contends that more probative evidence of the defendants' adoption and ratification of the Associated General Contractors contract with its trust fund obligations occurred

by virtue of oral statements and conduct of defendants' officers and employees in dealing with the plaintiff prior to and during construction of the later Camden job. In October, 1969, Matark, a separate but commonly-owned corporation by the Bracy family, began construction of the Camden, Arkansas, housing project. Without recounting all of the meetings and conversation between representatives of the plaintiff and defendants on the Camden job site, it appears that some negotiations were conducted between the parties for the employment of union carpenters from Local 529. In substance, plaintiff's business agent and an international union representative testified that the defendants' superintendents and President Jack Bracy, led them to believe that if union carpenters from Local 529 were furnished to the Company, their hourly area fringe benefits, along with those of the larger majority of non-union carpenters employed would be paid into the trust funds pursuant to the Associated General Contractors contract. On the other hand, the defendants' witnesses, which included Mr. Bracy, testified without contradiction that unlike the Clarksville job only a few union carpenters were hired from Local 529 as an accommodation to its business agent who seemingly wanted to receive the credit for referring some union carpenters from his local to the job. They denied ever signing or agreeing to sign or be bound by the terms of the Associated General Contractors and trust fund agreements.

The closest that the parties ever came to any agreement on the Company's method of handling the pre-determined area fringe benefits occurred during a March 24, 1970, meeting at the job site. Mr. Bracy orally agreed to work a few of the local's carpenters on the job which was then nearing completion. The international representative present contended that a ruling he had seen from the Solicitor of the U. S. Department of Labor in another case would require the payment of both union and non-union employees' hourly fringe benefits into the Associated General Contractors trust funds in order for the Company to receive credit for paying the pre-determined federal wage and fringe benefit scale under the Davis-Bacon Act. Because Mr. Bracy stated he especially feared that the non-union carpenters' chances of ever sharing in the funds were remote and the fact that his federal contracting agency, the Department of Housing and Urban Development, might not approve of this method of paying the fringe benefits, he declined to accept the international representative's proposal, if it was one, based on his interpretation of the purported Labor Department ruling.

From these discussions by the parties the evidence discloses and the Court finds that:

(1) Bracy as President of the Company was the only corporate officer of either defendant that engaged in the discussions with representative of the plaintiff who had authority to bind the defendants to a labor agreement and the plaintiff's representatives were aware of this fact;

(2) During the course of the meeting March 24, 1970, Mr. Bracy entered into no agreement in writing or orally to sign the Associated General Contractors' contract and trust fund agreements;

(3) On behalf of the defendant company Bracy offered to pay the hourly fringe benefits to the trust funds on those carpenters at the Camden project who would individually authorize the company in writing to make the contributions to the trust funds, which offer the Union rejected or failed to accept;

(4) Copies of the trust fund agreements and the purported Labor Department ruling was not received by the defendants until two days following the meeting of March 24, when the information was submitted with a letter from

the Union's international representative;

(5) The ruling of the Labor Department relied upon by the Union indicates that payment of the predetermined hourly benefits either to an employee in extra wages or to a bona fide trust fund constitutes compliance with the Davis-Bacon Act; and

(6) The plaintiff Union continued to furnish the defendant company carpenters on the Camden job when requested until the project was completed, notwithstanding, the company's failure to make the disputed trust fund contributions in contravention of the Union's agreement with the Associated General Contractors and Mr. Bracy's continued position that in paying the carpenters the fringes in extra wages no policy of the Labor Department was violated.

■ Without any evidence establishing the fact that the defendants executed the Associated General Contractors' contract and trust fund agreements or that the defendants authorized the Associated General Contractors to be their bargaining agent, the record in this proceeding fails to establish by credible evidence that the defendants evinced an intent at any time to adopt or ratify the agreements by their conduct or conversations with the plaintiff. Formation of a binding contract may be predicated on the theory of adoption and ratification, but the underlying elements of mutual consent and obligation which must be manifested in some form are lacking in the instant case. See Moglia v. Geoghegan, 403 F.2d 110 (2nd Cir. 1968), cert. denied 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453; Wagor v. Kovens Construction Corp., 382 F.2d 813 (5th Cir. 1967), cert denied 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1145.

■ The plaintiff maintains that the offer to furnish union carpenters at their March 24, 1970, meeting with President Bracy, contingent upon trust fund contributions, while not formally accepted at that time, culminated into a binding contract thereafter when the company acquiesced in the union's referring a few carpenters to the essentially non-union job. From the evidence as to the negotiation between the parties on the question, the Court does not find any basis for making an exception to the general rule that silence and inaction by the offeree does not ordinarily constitute an acceptance of an offer but, on the other hand, implies a rejection after lapse of a reasonable time. Cf. Reliance Bagging Co. v. Electric Gin Co., 208 Ark. 829, 187 S.W.2d 724 (1945); 17 Am.Jur.2d, Contracts § 47.

■ The Court concludes that the plaintiff has failed to assume its burden of proving the necessary requirement of an enforceable trust fund contribution that it be made pursuant to a written agreement with the employer as provided in Section 302(c) (5) (B) of the Act, 29 U.S.C.A. § 186. There is some authority that an executed bargaining agreement between the employer and the union is not contemplated by Section 302. See Doyle v. Shortman, 311 F.Supp. 187 (S.D.N.Y.1970). However, in Moglia, supra, the Second Circuit rejected the argument that an employer paying union scale and making contributions to a trust fund were tantamount to ratification and adoption of a written agreement where existing collective bargaining and trust fund agreements were unsigned by the employer, as in the instant case.

The Court is of the view that the plaintiff's reliance principally upon the cases of Doyle v. Shortman, supra and William Dunbar Co. v. Painters Council, 129 F.Supp. 417 (D.D.C.1955) is misplaced. In the Doyle case the court found, unlike the facts involved here, that the non-union employers were obligated to contribute to the trust fund in behalf of their employees because the trust agreements had been negotiated and signed by employer bargaining associations which in fact represented the non-union employer members at the time

of the negotiation. The *Dunbar* decision is equally distinguishable on its facts for the same reasons that the Second Circuit in *Moglia*, supra, outlined in 403 F.2d at page 118. In *Dunbar* there had existed at one time a valid trust agreement signed by the employers within the intendment of Section 302(c) (5) (B) and the court was faced with the issue of dissatisfaction of the written agreement requirement when the original signed copy disappeared and enforcement of the trust fund obligation was based on an unsigned copy to overcome what the court characterized as a technical argument, it held that a written, not a signed, agreement under those circumstances was sufficient to comply with Section 302(c) (5) (B). In the instant case, there was no original collective bargaining or written agreement which the defendants executed individually nor were they represented by the Associated General Contractors when the collective bargaining and trust agreements were negotiated and executed by the employer bargaining association. The Court, therefore, concludes that the plaintiff is barred from enforcing any trust fund contributions from the defendants in view of the absence of evidence that the defendants executed or became parties to a written agreement within the meaning of Section 302(c) (5) (B).

In view of the Court's findings that a valid agreement with the defendants was never consummated, it is unnecessary to reach the additional question of whether the alleged oral agreements are unenforceable in a Section 301 proceeding because of the applicability of the Arkansas Statute of Frauds to oral agreements extending over one year in duration.

In view of the Court's holding that the defendants did not become bound to the obligations of the Associated General Contractors' contract and trust fund agreements either by execution or adoption and ratification, it follows that their payment of the hourly fringe benefits as extra wages directly to the carpenters on the Camden project, rather than to the Administrator of the trust funds, was not a breach of any contract in violation of Section 301 of the Act. This opinion includes the Court's findings of fact and conclusions of law pursuant to the provision of Rule 52 of the Federal Rules of Civil Procedure.

Pursuant to this opinion, and the Court's findings and conclusions, an order dismissing the complaint of the plaintiff will be entered.