**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Central States, Southeast and Southwest Areas Health & Welfare Fund, et al., Plaintiffs,**

v.

**ADMIRAL MERCHANTS MOTOR FREIGHT, INC., Defendant.**

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and Central States, Southeast and Southwest Areas Health & Welfare Fund, et al., Plaintiffs,**

v.

**JACK COLE–DIXIE HIGHWAY COMPANY, INC., Defendant.**

**Nos. 3–80 Civ. 189, 3–76 Civ. 42.**

United States District Court, D. Minnesota, Third Division.

Aug. 7, 1980.

---

Robins, Davis & Lyons by Ernest I. Reveal, and Alan M. Levy, Minneapolis, Minn., for plaintiffs. `

O'Connor & Hannan by Joe A. Walters, and Jeremiah J. Kearney, Minneapolis, Minn., for defendants.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

ALSOP, District Judge.

This matter comes before the court upon the motions by plaintiffs for a preliminary

injunction, for partial summary judgment on their claims for monetary relief against defendant Admiral Merchants Motor Freight, Inc. ("Admiral") and for partial summary judgment against both defendants on most of defendants' counterclaims.[1] Memoranda were submitted on behalf of all parties, and oral argument was heard on June 27, 1980.

In accord with the Eighth Circuit Court of Appeals' suggestion in *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207 (8 Cir., 1976), and with Rule 65 of the Fed.R.Civ.P., the court makes the following:

## FINDINGS OF FACT

1. The Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the Central States, Southeast and Southwest Areas Health & Welfare Fund ("Welfare Fund") are trusts established pursuant to trust agreements entered into by and between the Central States Drivers Council, the Southern Conference of Teamsters and their affiliated local unions, the Southeastern Area Motor Carriers Labor Relations Association, the Southwest Operators Association, the Motor Carriers Employers' Conference—Central States and their constituent members, and the individual trustees. In the case of the Pension Fund, the National Automobile Transporters Labor Council, the Cartage Employers' Management Association, the Cleveland Draymen Association, the Northern Ohio Motor Truck Association, Inc., and their constituent members were additional parties to the trust agreement. The respective trusts are intended to provide retirement benefits and health care protection to certain of the employees of employers who were and are bound by the trust agreements establishing the Funds, either by direct participation in the administration of the Funds or by acceptance of that administration through collective bargaining agreements with affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and to those employees' families and dependents.

2. The Pension Fund and the Welfare Fund are employee benefit plans within the meaning of Sections 3(1)(2)(3)(21) and 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1002(1)(2)(3)(21) and 1132 (Supp.1979).

3. Loran W. Robbins, R. V. Pulliam, Howard McDougall, Robert W. Baker, Thomas F. O'Malley, Harold J. Yates, Earl Jennings and Marion Winstead, and their successors, are the Trustees of the Pension Fund and as such are fiduciaries of the Pension Fund within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(21)(A) (Supp.1979). Pursuant to the language of the trust agreement creating the Pension Fund and the collective bargaining agreement between defendants and the Central States Drivers' Council, the Southern Conference of Teamsters and their affiliated local unions, the Trustees are authorized to bring this action on behalf of the Pension Fund.

4. Loran W. Robbins, R. V. Pulliam, Robert W. Baker, Thomas F. O'Malley, Harold J. Yates, and Earl Jennings, and their successors, are the Trustees of the Welfare Fund, and as such are fiduciaries of the Welfare Fund within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(21)(A) (Supp.1979). Pursuant to the language of the trust agreement creating the Welfare Fund and the collective bargaining agreement between defendants and the Central States Drivers' Council, the Southern Conference of Teamsters and their affiliated local unions, the Trustees are authorized to bring this action on behalf of the Welfare Fund.

5. Defendant Jack Cole-Dixie Highway Company, Inc. ("Cole") is a corporation organized and existing under the laws of the State of Alabama and has its principal place

---

1. Plaintiffs do not seek summary judgment on Count One of Jack Cole-Dixie Highway Co.'s Amended Counterclaim or on Count Five of Admiral's Counterclaim.

of business in that state. Defendant Admiral is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in that state. Both defendants are engaged in an industry affecting commerce within the meaning of Sections 3(5), (11), (12) and (14) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(5), (11), (12) and (14) (Supp.1979), and the Labor-Management Relations Act of 1947, 29 U.S.C. § 151 *et seq.* (Supp.1979). Neither defendant is a trustee, administrator, beneficiary, participant, or fiduciary of plaintiff Funds, nor is any officer of either defendant. Neither defendant is the Secretary of Labor, nor is any officer of either defendant.

6. Defendants both are controlled by 2625 Territorial Road Co., a corporation existing and organized under the laws of the State of Minnesota with its principal place of business in that state. 2625 Territorial Road Co. is not a party to either of the above-entitled actions.

7. At all times relevant herein, with the possible exception of 1976–1978, defendants have been members of the Motor Carrier Labor Advisory Council, a multi-employer bargaining representative authorized to negotiate and execute contracts on behalf of its constituent members. The Motor Carrier Labor Advisory Council is a party to the National Master Freight Agreement and its Central States Area Local Cartage and Over-The-Road Supplemental Agreements for the period 1979–1982 (hereinafter referred to as the "Local Cartage Agreement" and the "Over-The-Road Agreement," respectively), which bind all the Council's members to those Agreements.

8. Article 55 of the Local Cartage Agreement and Article 66 of the Over-The-Road Agreement obligate the employers bound thereto to contribute $41 per week, effective April 1, 1979, to the Pension Fund for each employee covered by those agreements. Effective April 1, 1980, the weekly contribution increased to $46 per week per employee. Effective April 1, 1981, the weekly contribution will be increased to $51 per week per employee. Article 54 of the Local Cartage Agreement and Article 65 of the Over-The-Road Agreement obligate each employer bound thereto to contribute $33.50 per week effective April 1, 1979 to the Welfare Fund for each employee covered by those agreements. Effective April 1, 1980, the weekly contribution was increased to $36.50 per week per employee. Effective April 1, 1981, the weekly contribution will be increased to $39.50 per week per employee.

9. Until September of 1979, Cole made payments in accordance with the terms of the Local Cartage and Over-The-Road Agreements. However, since September of 1979, and continuing to date, Cole has failed to make any payments to either of the Funds, notwithstanding repeated demands that it comply with its obligation to properly report and make contributions for all of its employees covered by the Local Cartage and Over-The-Road Agreements.

10. Until September of 1979, Admiral made payments in accordance with the terms of the Local Cartage and Over-The-Road Agreements. However, since September of 1979, and continuing to date, Admiral has failed, with one exception,[2] to make payments to either of the Funds notwithstanding repeated demands that it comply with its obligation to properly report and make contributions for all of its employees covered by the Local Cartage and Over-The-Road Agreements.

11. From September of 1979 to May 31, 1980, the delinquency of Cole to the Pension Fund has grown by $204,155.06 and to the Welfare has grown by $164,562.00. In addition, Cole has a pre-existing delinquency of a total of $684,338.00 incorporated in the prior judgment of this court. Therefore, Cole presently owes the Funds a total of $1,053,055.56. That delinquency continues to grow at the rate of more than $15,000 per month. From October of 1979 to May 31, 1980, the delinquency of Admiral to the Pension Fund increased to $576,251.99 and

---

**2.** On May 16, 1980, Admiral made a payment in the amount of $1,539 to the Pension Fund. No other remittance has been made since September 30, 1979.

to the Welfare Fund increased to $380,-920.79. That delinquency continues to grow at the rate of more than $79,000.00 per month.

12. Notwithstanding the failure of defendants to make payments as required in accordance with the terms of the Local Cartage and Over-The-Road Agreements, the Funds have been obligated to pay benefits to employees of defendants and their dependents. For example, the Welfare Fund has been obligated to provide hospitalization and medical insurance coverage, thereby incurring substantial direct costs. Similarly, the Pension Fund has incurred serious potential liabilities; pension rights and credits for future benefits must be calculated on the basis of employee service, regardless of whether payments are received from the employer. In addition, defendants' failure to make payments as required in accordance with the terms of the Local Cartage and Over-The-Road Agreements results in a loss of investment income on which the Funds' health care and retirement programs are dependent. The net result of the failure of defendants to comply with their obligations under the Local Cartage and Over-The-Road Agreements is, therefore, diminished resources for all participants and beneficiaries in the Funds, both defendants' employees and their dependents, whose status is subject to review due to lack of contributions in their behalf, and all other employees and their dependents, who may not receive the maximum possible benefits from their employers' timely and correct payments because some of those resources must be utilized to protect defendants' employees. Thus, the ability of the Funds to meet their obligations pursuant to the terms of the employee benefit plans is adversely affected by defendants' delinquencies.

13. By virtue of the foregoing, the Funds lack an adequate remedy at law.

14. By virtue of the foregoing, the Funds are likely to suffer irreparable injury.

## CONCLUSIONS OF LAW

1. Jurisdiction exists by virtue of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 (Supp. 1979), in that plaintiffs allege violations of collective bargaining agreements between an employer and a labor organization representing employees in an industry affecting commerce.

2. Jurisdiction further exists under Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (Supp.1979).

3. The plaintiff Funds qualify for the exception in Section 302(c)(5) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 186(c)(5) (Supp.1979).

4. Defendants are bound to the terms of the Local Cartage and Over-The-Road Supplemental Agreements and were and are required to make payments to the Funds in accordance with the terms of those Agreements.

5. Defendants' steadily mounting delinquencies and plaintiffs' attendant loss of investment income, coupled with the Funds' continuing obligation to provide benefits to defendants' employees and their beneficiaries, make it possible that irreparable injury will be suffered by the Funds and all of the participants and beneficiaries whose interests they are obligated to protect.

6. As a result of defendants' continued breach of their obligation to make payments to the Funds for each week worked by every employee working under the terms of the collective bargaining agreements, the Funds lack an adequate remedy at law. The inadequacy of any remedy at law is further indicated by defendants' admittedly precarious financial condition, thereby increasing the likelihood that they will be unable to satisfy any judgment ultimately rendered by the court.

7. As a result of the irreparable injury which the Funds may suffer and the inadequacy of any remedy at law, a denial of their motion for a preliminary injunction will result in far greater harm to the Funds than that which would be suffered by de-

fendants should a preliminary injunction be granted.

8. In light of the Funds' status as employee benefit plans which provide retirement benefits and health care protection to employees of employers who were and are bound by the trust agreements establishing the Funds and to their dependents, the public interest is better served by the issuance of the preliminary injunction sought herein than by its denial.

9. Count One of defendant Cole's Amended Counterclaim and Count Five of defendant Admiral's Counterclaim raise certain issues of fact which could warrant trial. Therefore, these Counts shall be preserved.

10. Counts Two through Five of defendant Cole's Amended Counterclaim and Counts One through Four of defendant Admiral's Counterclaim allege acts of Fund mismanagement and errors in both general and specific investment policies which constitute breaches of the fiduciary obligations of plaintiff Funds' Trustees. Neither defendant has standing to raise these claims under the Labor-Management Relations Act, the Employee Retirement Income Security Act of 1974, federal common law, or state common law.

11. No just reason exists for delay in entering a judgment as to all of the claims of the parties except Count One of defendant Cole's Amended Counterclaim, Count Five of defendant Admiral's Counterclaim, plaintiff's claim for damages allegedly owed by defendant Cole for the period from March 27, 1977 to date, and plaintiffs' request for a permanent injunction.

## DISCUSSION

1. Plaintiffs' Motion For A Preliminary Injunction.

Plaintiffs have moved for a preliminary injunction ordering defendants to make contributions to them in accordance with their obligations under collective bargaining agreements between defendants and affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen &

Helpers of America. Relief is requested under 29 U.S.C. § 1132(a)(3) (Supp.1979), which authorizes the bringing of a civil action to obtain equitable relief to enforce the terms of welfare and pension plans.

A preliminary injunction should issue "upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978).

█ It clearly is probable that plaintiffs will succeed on the merits. *See Central States, Southeast and Southwest Areas Pension Fund v. Jack Cole-Dixie Highway Co.*, No. 3–76 Civ. 42 (D.Minn. June 20, 1977), *aff'd*, No. 77–1566 (8th Cir. January 6, 1978) (per curiam); *see also* "2. Plaintiffs' Motion For Partial Summary Judgment Against Admiral Merchants Motor Freight, Inc., " *infra.* Therefore, preliminary injunctive relief is proper if plaintiffs have clearly shown that irreparable injury may result from a denial of relief.

The court finds that plaintiffs have made the requisite showing. As they have acknowledged, defendants both are in precarious financial condition. Consequently, it is possible that defendants would be unable to satisfy any judgment ultimately rendered by the court, particularly in light of the fact that the obligations of each increase by more than $15,000 per month.

Defendant Cole argues that plaintiffs' motion for a preliminary injunction restraining them is "not properly before the court" because the judgment previously entered by the court "merged the plaintiffs' cause of action into the judgment." The court disagrees. The judgment entered on June 20, 1977 related only to plaintiffs' claim for damages based on the 1974–1977 National Master Freight Agreement, Local Cartage Agreement and Over-The-Road Agreement, and to Counts One and Two of

defendant Cole's Counterclaim. It did not deal with plaintiffs' claims for preliminary and permanent injunctive relief and for damages allegedly incurred after March 26, 1977. Consequently, plaintiffs' claim for preliminary injunctive relief is properly before the court at this time.[3]

2. Plaintiffs' Motion For Partial Summary Judgment Against Admiral Merchants Motor Freight, Inc.

Plaintiffs move the court for a monetary judgment against Admiral. They rest on the court's order for partial summary judgment in *Central States, Southeast & Southwest Areas Pension Fund v. Jack Cole-Dixie Highway Co.*, No. 8–76 Civ. 42 (June 20, 1977), aff'd, No. 77–1566 (8th Cir. January 6, 1978) (per curiam).

■ Defendant Admiral presents several arguments in support of its contention that summary judgment should not be granted. Admiral argues first that plaintiffs bear the burden of proving that they are qualifying trusts under § 302(c)(5) of the Labor Management Relations Act. According to Admiral, plaintiffs' failure to allege in their Complaint that they qualify under § 302(c)(5) requires the dismissal of this action.

The court does not agree. The statute does not require that parties bringing suit under § 302(c)(5) allege in their complaints that they qualify under it, nor does the court perceive any reason for imposing such a requirement.[4]

Next, defendant Admiral asserts that its contributions to plaintiffs would be illegal for the following three reasons: (a) the collective bargaining agreements entered into by defendant do not satisfy § 302(c)(5),

and defendant is neither a party to nor bound by the trust agreements, which indisputably do qualify under § 302(c)(5); (b) the exclusion of the Motor Carrier Labor Advisory Council and defendant from representation in the administration of the Funds precludes plaintiffs as a matter of law from satisfying § 302(c)(5); and (c) the Funds were not established for the sole and exclusive benefit of covered employees, as required by § 302(c)(5).

In relevant part, § 302(c) provides that an employer may not make payments to its employees' representative, except to:

(5) a trust fund established by such representative for the sole and exclusive benefit of the employees of such employer, and their [beneficiaries]: Provided, that . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and the employees and employers are equally represented in the administration of such a fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon . . . .

Defendant contends that contributions by it to the Funds would be illegal because the collective bargaining agreements are not the "written agreements" required by § 302(c)(5) and there is some doubt as to whether the trust agreements—which *would* satisfy the statute's "written agreement" requirement—are binding on Admiral. In support of this contention, Admiral notes that this court's Findings of Fact, Conclusions of Law, and Order for Partial Summary Judgment dated June 20, 1977, entered in Case No. 3–76 Civ. 42, include a

---

3. As an alternative ground for its Order of October 7, 1976, the court ruled that plaintiffs' action was, as plaintiffs then described it, "a simple collection case," one seeking monetary relief only. Defendant Cole's subsequent actions have demonstrated the need for injunctive relief in addition. This no longer is "a simple collection case."

4. The cases cited by defendant in support of its argument do not suggest that such a requirement exists. *See Bricklayers, Masons & Plas-*

*terers Int'l, Local 5 v. Stuart Plastering Co.*, 512 F.2d 1017, 1020 (5th Cir. 1975) (holding that plaintiffs bear the burden of going forward when the qualification of the trust is at issue); *Local 529, United B'hd of Carpenters & Joinders v. Bracy Dev. Co.*, 321 F.Supp. 869, 875 (W.D.Ark.1971) (holding that the burden of proof is on the plaintiffs). Moreover, if such an allegation were needed, the court would grant plaintiffs leave to file a Second Amended Complaint to remedy the deficiency.

finding that there exists a genuine issue of material fact as to whether the trust agreements are binding on Jack Cole-Dixie Highway Co., Inc.

The court finds that Admiral is bound by the trust agreements. In its June 20, 1977 opinion, the court held that Jack Cole-Dixie Highway Co., Inc. was bound by the trust agreements for the time during which the 1974–1976 Master Freight Agreement and its Over-the-Road and Local Cartage Supplements were in effect. The United States Court of Appeals for the Eighth Circuit upheld this ruling in an unpublished per curiam decision, No. 77–1566 (January 6, 1978). This court indicated in its June 20, 1977 opinion that it was not deciding whether Cole was bound by the trust agreements for the time during which the 1977–79 Master Freight Agreement and its Over-the-Road and Local Cartage Supplements were in effect, as there remained unresolved the question of whether defendant had withdrawn from the Motor Carrier Labor Advisory Council, which had signed the trust agreements on its behalf. Since Admiral does not contend that it has withdrawn from the Motor Carrier Labor Advisory Council, the court concludes that Admiral is bound to the trust agreements by reason of the 1976–79 and 1979–1982 Master Freight Agreements and their Over-the-Road and Local Cartage Supplements. *See* Local Cartage Agreement, at 130:

> By the execution of the Agreement, the Employer authorizes the Employer's Associations which are parties hereto to enter into appropriate trust agreements necessary for the administration of such Funds, and to designate the Employer Trustees under such agreement, hereby waiving all notice thereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

In its opinion dated June 20, 1977 in Case No. 3–76 Civ. 42, the court also found, at least implicitly, that the plaintiff Funds satisfy § 302(c)(5) of the Labor-Management Relations Act of 1947. Defendants raised this issue in their appeal to the United States Court of Appeals for the Eighth Circuit, *see* Appellant's Statement of Issues, and the Court of Appeals found that the plaintiff Funds satisfy § 302(c)(5). No. 77–1566 (8th Cir. January 6, 1978) (per curiam). Both this court and the Court of Appeals rejected Cole's arguments that the method of selecting employer trustees violates the "equal representation" provision of the statute and that the plaintiff Funds were not "established for the exclusive benefit of the participants and beneficiaries."

■ Nevertheless, Admiral argues that the "equal representation" clause of § 302(c)(5) is violated when, as here, "an employer is denied representation and must rely on representatives selected by competing associations." The court continues to disagree. There is no violation of § 302(c)(5) where, as here, an employer authorizes an employer organization to select representatives which will bind it. *See Denver Metropolitan Association of Plumbing, Heating & Cooling Contractors v. Journeymen, Plumbers & Gas Fitters Local No. 2*, 586 F.2d 1367, 1373–75 (10th Cir. 1978) & cases cited therein. There simply is no real possibility in this instance that the union will dominate the Funds. *See Quad City Builders Assoc. v. Tri City Brick Layers Union No. 7*, 431 F.2d 999, 1003 (8th Cir. 1970). *Compare id.* ("equal representation" provision violated where the union participates to any degree in the selection of employer trustees); *Mobile Mechanical Contractors Assoc. v. Carlough*, 456 F.Supp. 310, 325–26 (S.D.Ala.1978) (same); *Associated Contractors v. Laborers International Union*, 559 F.2d 222, 228 (3d Cir. 1977) ("equal representation" clause violated "when employer trustees representing a rival association not party to the original trust agreement are added to the board without the consent of the original employer associations.") Moreover, the ruling that defendants request would have the undesirable and unintended consequence of requiring that the Funds be administered by at least 22 trustees, as there are 22 signatories to the relevant collective bargaining agreement.

■ Admiral also contends that issues of material fact as to whether the Funds were established for the exclusive benefit of the participants and beneficiaries are raised by the allegations made in two actions brought in the Northern District of Illinois against various trustees of the Funds, *Ray Marshall v. Frank Fitzsimmons*, Civ. No. 78C–342, and *Ray Marshall v. Loran W. Robbins*, Civ. No. 78C–4075. However, the allegations in these cases relate only to the alleged mismanagement of the Funds by the Trustees. There is no indication in the complaints filed to commence these cases, or elsewhere, that the Funds were established for the benefit of anyone other than the participants and beneficiaries of the Funds. The court therefore again concludes that the Funds were established for the exclusive benefit of their participants and beneficiaries.

Having concluded that there is no material distinction between the relationship of Admiral and plaintiffs and that of Cole and plaintiffs on June 20, 1977, and finding that there exist no unresolved issues of material fact, the court will order that summary judgment be entered against Admiral for the amount sought by plaintiffs.

3. Plaintiffs' Motion For Summary Judgment On Defendants' Counterclaims.

Plaintiffs have moved for summary judgment on all of defendants' counterclaims except Count One of Cole's Amended Counterclaim and Count Five of Admiral's Counterclaim. Plaintiffs contend that both defendants lack standing to assert these counterclaims.

Defendants maintain that according to federal common law of collective bargaining, they have an implied private cause of action under § 302(c)(5) of the Labor-Man-

agement Relations Act of 1947 (LMRA), 29 U.S.C. § 186 (Supp.1979), and under the Employee Retirement Income Security Act of 1974 (ERISA). They allege that they have a "substantial interest in the prudent management of employee benefit plans," having suffered "substantial economic impact" as a result of the alleged mismanagement of the Funds. Specifically, defendants claim that their contributions to the Funds were increased because the Trustees' mismanagement reduced the amounts in the Funds, and these reductions influenced the collective bargaining negotiations in which the amounts of future contributions were determined.

■ The court does not agree that defendants have an implied private cause of action for damages under the LMRA or ERISA.[5] Section 302 of the LMRA specifically authorizes actions to restrain violations of its terms, § 302(e), and provides for penalties for willful violation of its terms, § 302(d), but does not provide for damage actions by employers. ERISA by its terms permits actions only by the Secretary of Labor and participants, beneficiaries, and fiduciaries of trust funds, 29 U.S.C. § 1132(a) (Supp.1979). Moreover, there is no indication in their legislative histories that ERISA or § 302 of the LMRA was intended to permit employers to seek damages which allegedly flow from the failure of trustees to manage a trust prudently, nor do the cases cited by defendants indicate that either statute was designed to permit employers to bring such actions. *See Nedd v. United Mine Workers*, 556 F.2d 190 (3d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978) (beneficiaries have implied cause of action for damages); *Mobile Mechanical Contractors Assoc. v. Carlough, supra* (employers have implied right to seek damages caused by a

---

5. There is some question whether defendants have standing in the constitutional sense, *i. e.*, whether they allegedly have suffered injuries which "fairly can be traced to the challenged action of the [plaintiffs]." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 74, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978), *quoting Simon v. Eastern Ky. Welfare Rights Org.*, 426

U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). In view of the resolution of the case on nonconstitutional grounds, the court does not reach this issue. *See Bowen v. United States*, 422 U.S. 916, 920, 95 S.Ct. 2569, 2572, 45 L.Ed.2d 641 (1975) (federal courts should be reluctant to decide constitutional questions unnecessarily.)

strike directed at coercing illegal contributions to a trust fund); *Associated Contractors v. Laborers International Union, supra* (employers have implied cause of action for declaratory relief as to the legality of amendments to trust agreements and actions taken pursuant thereto); *Denver Metropolitan Assoc. of Plumbers, Heating & Cooling Contractors v. Journeymen, Plumbers & Gas Fitters Local No. 2, supra* (employers have implied cause of action for declaratory relief as to alleged breaches of a collective bargaining agreement and violations of § 302(c)(5)(B) of the LMRA).

In determining whether an implied remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted" (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy? And finally, is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law? [*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) (citations omitted).]

Although defendants are within the class for whose especial benefit § 302 of the LMRA was passed,[6] there is no indication that the legislature intended to create the remedy they request. In fact, such a remedy would hinder the achievement of the goals of the LMRA. If employers could bring actions for "damages" resulting from increases in contributions *agreed upon in collective bargaining negotiations*, the process of collective bargaining—which the LMRA was designed to promote as a significant contributor to industrial peace[7] —would be undermined. Thus, since the

remedy requested by defendants would not aid in accomplishment of Congressional goals in enacting § 302, *see id.* 422 U.S. at 84, 95 S.Ct. at 2090 and *Cannon v. University of Chicago,* 441 U.S. 677, 703, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979), since the legislative history suggests no intention to grant such a remedy, *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979), and since no other considerations suggest that defendants should have an implied right to damages under the LMRA, the court holds that defendants possess no such implied right.

■ The court also finds that defendants cannot bring an implied cause of action under ERISA for the damages they seek. Permitting recovery by employers for damages allegedly caused by trust mismanagement would deplete the Funds' assets and thus hinder the achievement of a primary goal of ERISA, protection of the interests of participants in employee benefit plans and their beneficiaries. 29 U.S.C. § 1001 (Supp.1979). Moreover, the legislative history of ERISA indicates an intention to permit actions alleging trustee mismanagement by only the Secretary of Labor and those with an interest in receiving benefits under the pension plans. In fact, 29 U.S.C. § 1103 (Supp.1979) explicitly provides that, with exceptions not applicable here, "the assets of the plan shall never inure to the benefit of any employer." Finally, ERISA was enacted for the especial benefit of participants in and beneficiaries of pension plans, and not for the especial benefit of employers. Thus, as the remedy requested by defendants would hinder the accomplishment of the Congressional goals in enacting ERISA, as the legislative history does not indicate an intention to grant such a remedy, and as other considerations suggest that defendants have no implied right to damages under ERISA, the court holds that

---

**6.** Section 302 protects employers against demands for unlawful payments.

**7.** *See, e. g., Abood v. City of Detroit*, 441 U.S. 209, 224–26, 97 S.Ct. 1782, 1793–95, 52 L.Ed.2d 261 (1977).

defendants have no such implied right. *See* cases cited *supra.*[8]

■ Defendants also argue that the trustee plaintiffs are their agents and therefore may be sued for alleged mismanagement under federal common law of collective bargaining and state common law. The court cannot agree. The cases cited by defendants do not hold that trustees are agents of employers, nor does the court find any reason to do so. The trustees do not derive their authority from, nor serve upon the orders of, the employers, and the employers are not held vicariously liable if the trustees mismanage the Funds. Consequently, the trustees should not be considered agents of the employers. *See Restatement of the Law Second—Agency* §§ 1,140,217 & 14B, Comments f & g. Moreover, because of the conflicts with the LMRA and ERISA that would result from the granting of such a remedy, *see supra*, defendants cannot be permitted to sue the plaintiff Trustees for damages allegedly resulting from mismanagement of the Funds.

As to state law, 29 U.S.C. §§ 1144(a) & (c) and the considerations discussed above indicate that state law is preempted by ERISA. *See Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, Slip Op. at 1351 (8th Cir. 1980).

4. Conclusion.

There being no genuine issues of material fact for the court to resolve, and it being clear that plaintiffs are entitled to judgment as a matter of law, the court will enter judgment in plaintiffs' favor on the relevant counterclaims. *See* Rule 56 of the Fed.R.Civ.P.

Upon the foregoing,

IT IS ORDERED That the plaintiffs Loran W. Robbins, R. V. Pulliam, Howard McDougall, Robert W. Baker, Thomas F. O'Malley, Harold J. Yates, Earl Jennings, and Marion Winstead, and their successors as Trustees of the plaintiff Central States,

Southeast and Southwest Areas Pension Fund, have judgment of and recover from defendant Admiral Merchants Motor Freight, Inc., the sum of $576,251.99.

IT IS FURTHER ORDERED That the plaintiffs Loran W. Robbins, R. V. Pulliam, Robert W. Baker, Thomas F. O'Malley, Harold J. Yates, and Earl Jennings, and their successors as Trustees of the plaintiff Central States, Southeast and Southwest Areas Health & Welfare Fund, have judgment of and recover from defendant Admiral Merchants Motor Freight, Inc. the sum of $380,920.79.

IT IS FURTHER ORDERED That Counts Two through Five, inclusive, of defendant Jack Cole-Dixie Highway Co., Inc.'s Amended Counterclaim be and they hereby are dismissed with prejudice.

IT IS FURTHER ORDERED That Counts One through Four, inclusive, of defendant Admiral Merchants Motor Freight, Inc.'s Counterclaim be and they hereby are dismissed with prejudice.

IT IS FURTHER ORDERED That the court will retain jurisdiction over the following: (1) the plaintiff Funds' fees, costs and disbursements herein, (2) the plaintiff Funds' claim for permanent injunctive relief; (3) Count One of defendant Jack Cole-Dixie Highway Co., Inc.'s Amended Counterclaim; (4) Count Five of defendant Admiral Merchants Motor Freight, Inc.'s Counterclaim; and (5) plaintiffs' claim as against defendant Jack Cole-Dixie Highway Co., Inc. for damages which have accrued since March 27, 1977.

IT IS FURTHER ORDERED That upon the posting of the security provided for herein, defendant Jack Cole-Dixie Highway Co., Inc., its directors, officers, agents, servants, employees, shareholders, and all persons acting on its behalf or in conjunction with it, shall be restrained and enjoined, pending further order of this court, from failing and/or refusing to pay all monies

8. It may be that an employer has an implied right to bring a declaratory or injunctive action alleging mismanagement of a trust fund, or an action for damages resulting from the termination of a trust fund. *See* 29 U.S.C. § 1364. However, as 29 U.S.C. § 1103 makes clear, defendants have no right to seek damages in *this* instance.

due plaintiff Funds on behalf of all of defendant Jack Cole-Dixie Highway Co., Inc.'s employees participating in said Funds, pursuant to the aforementioned collective bargaining agreements, trust agreements, and pension plans.

IT IS FURTHER ORDERED That upon the posting of the security provided for herein, defendant Admiral Merchants Motor Freight, Inc., its directors, officers, agents, servants, employees, shareholders, and all persons acting on its behalf or in conjunction with it, shall be restrained and enjoined, pending further order of this court, from failing and/or refusing to pay all monies due plaintiff Funds on behalf of all of defendant Admiral Merchants Motor Freight, Inc.'s employees participating in said Funds, pursuant to the aforementioned collective bargaining agreements, trust agreements, and pension plans.

IT IS FURTHER ORDERED That the Clerk of Court enter judgment as follows:

"IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1. Plaintiffs Loran W. Robbins, R. V. Pulliam, Howard McDougall, Robert W. Baker, Thomas F. O'Malley, Harold J. Yates, Earl Jennings, and Marion Winstead, and their successors as Trustees of the plaintiff Central States, Southeast and Southwest Areas Pension Fund have and recover of the defendant Admiral Merchants Motor Freight, Inc. the sum of $576,251.99.

2. Plaintiffs Loran W. Robbins, R. V. Pulliam, Robert W. Baker, Thomas F. O'Malley, Harold J. Yates, and Earl Jennings, and their successors as Trustees of the plaintiff Central States, Southeast and Southwest Areas Health & Welfare Fund have and recover of the defendant Admiral Merchants Motor Freight, Inc. the sum of $380,920.79.

3. Defendant Jack Cole-Dixie Highway Company, Inc. have and recover nothing on Counts Two through Five, inclusive, of its Amended Counterclaim.

4. Defendant Admiral Merchants Motor Freight, Inc. have and recover nothing on Counts One through Four, inclusive, of its counterclaim."

IT IS FINALLY ORDERED That upon the filing by the plaintiffs of a bond in the amount of $2,500.00 as appropriate security for costs and damages, a preliminary injunction shall issue in the following form:

1. Pending further order of this court, defendant Jack Cole-Dixie Highway Company, Inc., acting through its directors, officers, agents, servants, employees, shareholders, and all persons acting in privity or in concert with defendant, is ENJOINED from failing to pay all monies due the plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health & Welfare Fund on behalf of all of defendant's employees participating in said Funds, pursuant to the relevant collective bargaining agreements, trust agreements, and pension plans.

2. Pending further order of this court, defendant Admiral Merchants Motor Freight, Inc., acting through its directors, officers, agents, servants, employees, shareholders, and all persons acting in privity or in concert with defendant, is ENJOINED from failing to pay all monies due the plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health & Welfare Fund on behalf of all of defendant's employees participating in said Funds, pursuant to the relevant collective bargaining agreements, trust agreements, and pension plans.