RALPH SNYDER & others, trustees,[1] vs. GEORGE M.
MURPHY.

Middlesex. April 16, 1980. — September 18, 1980.

Present: ARMSTRONG, ROSE, & PERRETTA, JJ.

*Labor. Contract,* Collective bargaining contract.

In an action by the trustees of a plumbers' union fund alleging that the
defendant plumbing contractor had breached his contract with the
union by failing to make monthly contributions to the fund at specified
rates, there was sufficient evidence to warrant a finding that the
defendant had agreed to be bound by a collective bargaining agree-
ment between the union and the Master Plumbers Association of
Boston, an association to which the defendant had never belonged;
and, therefore, such payments that the defendant had made were not
in violation of 29 U.S.C. § 186 (1976). [537-538]
In an action by the trustees of a plumbers' union fund alleging that the
defendant plumbing contractor had breached his contract with the
union by failing to make monthly payments to the fund at specified
rates, there was no support in the record for the defendant's contention
that his contribution to the fund was precluded by the language of the
trust agreements by which the fund was established. [538-539]

CIVIL ACTION commenced in the Superior Court on March
16, 1978.

The case was heard by *Ronan, J.,* on a master's report.

*Edward D. McCarthy* for the defendant.

*Peter J. Gagne* for the plaintiffs.

PERRETTA, J. The plaintiffs, in their capacities as trustees
of the Plumbers' Union Local No. 12 Education, Appren-
ticeship, Industry Improvement, Pension, Welfare, Annui-
ty, and Christmas and Vacation Funds (the funds), com-
menced this action in the Superior Court, alleging that the

[1] Joseph K. Walsh, Harvey Fleitman, George E. Zeolla, Rudolph Ricci,
and David R. McGinness.

defendant, a plumbing contractor, had breached his con-
tract with Local No. 12 (the Union) by failing to make
monthly contributions to the funds at specified rates. The
defendant denied the existence of an agreement requiring
such contributions, and he filed a counterclaim for the mon-
ies collected by the plaintiffs from him as contributions to
the funds on the basis that these contributions had been
made in violation of 29 U.S.C. § 186 (1976). The case was
referred to a master, who made findings of fact which were
generally favorable to the plaintiffs. The judge modified
the master's report in certain respects not here material,
and, as modified, he confirmed it and entered a judgment
for the plaintiffs. We affirm the judgment.

We summarize the relevant facts as they appear from the
master's findings of subsidiary facts, which we accept as they
are not mutually inconsistent, contradictory, plainly wrong
or vitiated in view of the controlling law, see *Covich* v.
*Chambers*, 8 Mass. App. Ct. 740, 743 (1979), and cases cited,
and as they appear from the documents in evidence. In
January, 1959, the defendant and the Union executed a writ-
ten contract whereby the defendant agreed to comply with
all of the requirements of the collective bargaining agreement
between the Union and the Master Plumbers Association of
Boston (the Association), an employer's association to which
the defendant has never belonged.[2] The 1957 collective
bargaining agreement expired in September, 1959, and it has
been succeeded by a new collective bargaining agreement
every two or three years. The defendant never signed the
1957 or succeeding collective bargaining agreements.

These collective bargaining agreements all contained provi-
sions requiring employer contributions, in specified amounts,
to various trust funds established over the years in accord with
§ 302(c)(5) of the Labor-Management Relations Act of 1947,
61 Stat. 157 (1947), 29 U.S.C. § 186(c)(5) (1976). The

---

[2] The agreement signed by the defendant in 1959 states: "I agree to
comply with all the requirements contained in the agreement between the
Master Plumbers Association of Boston and Local Union No. 12."

amounts of the contributions were determined on the basis of written reports which each employer was required to file and which showed the number of hours worked each month by Union plumbers. From 1959 through November, 1976, the defendant employed Union plumbers, and he made contributions to the Union funds in the amounts determined on the basis of the reports he filed.

On September 1, 1976, a new collective bargaining agreement took effect between the Union and the Association. Under this agreement, an employer was to pay the plaintiffs $2.78 per hour for each Union plumber employed by him.[3] Beginning in December, 1976, the defendant became delinquent in these payments to the funds, although he faithfully filed with the Union the report forms required by the collective bargaining agreement.[4] In May, September, and October, 1977, the plumbers ceased work on the defendant's jobs because of his payment delinquencies. On each occasion, however, the plumbers returned to work after the defendant, who acknowledged his indebtedness to the funds, was able to negotiate terms for payment of the arrearages. Union plumbers again ceased work on the defendant's jobs in November, 1977, and no Union plumbers have worked for him since that time. Federal statute 29 U.S.C. § 186(a) (1976), prohibits any payment by an employer to an employee representative. Section 186(c) of 29 U.S.C. sets out certain clearly defined exceptions to that general prohibition. The exception provided by § 186(c)(5) permits employer payments to trust funds established by the employee representative "for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the

---

[3] The allocation of this total amount was as follows: Education Fund, $.02; Apprenticeship Fund, $.03; Industry Improvement Fund, $.03; Pension Fund, $1.03; Welfare Fund, $1.02; Christmas and Vacation Fund, $.40; Annuity Fund, $.25.

[4] Between December, 1976, and November, 1977, Union plumbers employed by the defendant worked more than 2,500 hours for him. During that period, the defendant paid $43.36 to the plaintiffs.

employees of other employers making similar payments, and their families and dependents)" so long as, among other requirements not here pertinent, "the detailed basis on which payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B) (1976).

The defendant argues that he has no written agreement with the Union or the plaintiffs providing a detailed basis for the payment to the funds and that such payments are, therefore, illegal under § 186(a), and uncollectible in this civil action. In support of his counterclaim, the defendant maintains that the prior payments which he made to the funds were illegal and must be returned to him.[5]

It is undisputed that the 1976 collective bargaining agreement between the Union and the Association sets forth in adequate detail the basis for employer payments to the funds. The master's findings of subsidiary facts and the documentary evidence incorporated by reference in his report establish that the defendant and the Union agreed to adopt this collective bargaining agreement as their own. See *Roadway Exp., Inc.* v. *Teamsters Local 249,* 330 F.2d 859, 863 (3d Cir. 1964); *Line Drivers Local No. 961* v. *W. J. Digby, Inc.,* 218 F. Supp. 519, 522-523 (D. Colo. 1963), aff'd, 341 F.2d 1016 (10th Cir. 1965). Compare *Central Appalachian Coal Co.* v. *United Mine Wkrs.,* 376 F. Supp. 914, 921 (S.D. W.Va. 1974). This evidence shows that the parties defined their relationship by reference to the 1959 and succeeding collective bargaining agreements.[6] Contrast

---

[5] The defendant also counterclaimed for damages for injuries allegedly caused by the Union's pulling plumbers from his jobs. We do not consider this counterclaim because the defendant has failed to argue it within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[6] In addition to the express statement contained in the 1959 agreement between the parties, see note 2, *supra,* the defendant made the following statements, among others, in correspondence to the Union in 1977, concerning his delinquent payments to the funds: "I . . . do hereby agree to pay all current monies due Plumbers Union Local No. 12 Funds . . .," "I also agree to pay [specified amounts] until all arrearages have been paid," "[T]he Trustees agreed to reinstate me when I paid the sum of Three Thou-

*Moglia* v. *Geoghegan,* 403 F.2d 110, 118 (2d Cir. 1968), cert. denied, 394 U.S. 919 (1969). See *Bricklayers Local No. 15* v. *Stuart Plastering Co.,* 512 F.2d 1017, 1029 (5th Cir. 1975). The Union furnished the defendant with plumbers, and the defendant complied with the payment and reporting requirements of the succeeding agreements for nearly eighteen years. Contrast *Wagor* v. *Cal Kovens Constr. Co.,* 382 F.2d 813, 815 (5th Cir. 1967), cert. denied, 390 U.S. 952 (1968); *Local No. 529, United Bhd. of Carpenters* v. *Bracy Dev. Co.,* 321 F. Supp. 869, 874-875 (W.D. Ark. 1971). This evidence supports the master's findings to the effect that the Union and the defendant agreed to be bound by the collective bargaining agreement in effect between the Union and the Association when the present dispute arose. On this record the plaintiffs have shown "the underlying elements of mutual consent and obligation which must be manifested in some form," *id.* at 875, to establish the adoption of a collective bargaining agreement. Contrast *Moglia* v. *Geoghegan,* 403 F.2d at 118.

The defendant next contends that even if he did adopt the collective bargaining agreement between the Union and the Association, his contribution to the fund is precluded by the language of the trust agreements by which the funds were established. In particular, he argues that he is not an "employer," as that term is defined in the trust instruments, from whom the instruments allow payments to be received. We are unpersuaded by this argument. The trust agreements were received in evidence by the master, and he incorporated them by reference in his report. One such document to which the defendant points is entitled "Plumbers Union, Local No. 12 Annuity Plan," and it defines "Em-

---

sand Dollars to said Fund," "For the past 18 years I have fulfilled my agreement with the Union and intend to do so in the future," and "I respectfully request that George M. Murphy Plumbing and Heating Company be reinstated . . . and that I be allowed to continue in business and to fulfil my obligations and commitments to the Union and others."

ployer" as one "who has executed [a] collective bargaining agreement[ ] with the Union, or other written agreement with the Union or the trustees, which agreement[ ] provide[s] for payments to the fund. It is unnecessary to decide whether the defendant has "executed" such an agreement in the usual sense of that term because this document does not appear to have been executed prior to 1978, and is, therefore, not material to the legality of the payments due in 1976 and 1977. See *Stuart Plastering Co.*, 512 F.2d at 1026. It appears that the legality of the payments for those years would be determined by reference to an "Agreement and Declaration of Trust" which the Annuity Plans refer to as already in existence. That agreement and declaration of trust has not been included in the record, and the defendant has failed to show that acceptance of his payments was illegal.

The foregoing discussion also disposes of the defendant's contentions in support of his counterclaim.

*Judgment affirmed.*